United States District Court
Southern District of Texas
**ENTERED**
December 13, 2021
Nathan Ochsner, Clerk

AO 472  (Rev. 11/16)  Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT
for the

Houston Division of the

Southern District of Texas

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| ) | Case No.  4:21-mj-2515 |
| Gilberto Cantu ) | |
| *Defendant* ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☒ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☐ **(e)** any felony that is not otherwise a crime of violence but involves:
**(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
**(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

AO 472  (Rev. 11/16)  Order of Detention Pending Trial

☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☒ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*:  There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☒ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☒ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☒ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

**OR**

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

## Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong
☒ Subject to lengthy period of incarceration if convicted
☒ Prior criminal history
☒ Participation in criminal activity while on probation, parole, or supervision
☒ History of violence or use of weapons
☐ History of alcohol or substance abuse
☒ Lack of stable employment
☐ Lack of stable residence

☒ Lack of financially responsible sureties
☐ Lack of significant community or family ties to this district
☐ Significant family or other ties outside the United States
☐ Lack of legal status in the United States
☐ Subject to removal or deportation after serving any period of incarceration
☐ Prior failure to appear in court as ordered
☐ Prior attempt(s) to evade law enforcement
☐ Use of alias(es) or false documents
☐ Background information unknown or unverified
☐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

On December 2, 2021, the Court held a hearing to determine whether Defendant Gilberto Cantu should be held in custody pending trial in accordance with the Bail Reform Act of 1984, 18 U.S.C. § 3142(f). The Defendant is charged in a Criminal Complaint, Case No. 4:21-mj-5515, pending in the Southern District of Texas, Houston Division, with possession with intent to distribute over 5 kilograms of a mixture or substance containing cocaine in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A)(ii). Assistant United States Attorney Jimmy Leo appeared on behalf of the United States (the "Government"); CJA Attorney Eric Ashford appeared on behalf of Defendant.

Defendant's Background

Pretrial Services ("PTS") prepared a report after an interview of Defendant. He is 24 years old, and a life-long resident of Mission, Texas. He travelled to Houston to work with his cousin s few days before his arrest. He lives with his wife of 3 years in Mission for the past 7 years, but recently moved out. He was unable to provide an address for his wife's or his apartment. He has two children (ages 3 and 5) with his wife and another 12-year-old with another woman. He has a passport. Defendant reported that he is self employed, selling goods in a flea market for 15 years. Defendant's mother corroborated most of this information and said that Defendant could live with her and her husband (Defendant's father) if released on bond.

Defendant has a felony conviction for assault of a family member by impeding breathing and was sentenced to 5 years deferred probation. He was arrested for alien smuggling, but the disposition was unknown. Most recently, in 2019, he was convicted of possession of a controlled substance and was sentenced to 5 years on probation, which would terminate at the end of 2022.

PTS recommended detention.

Evidence Regarding the Pending Complaint

At the hearing, the Government offered testimony of a Special Agent ("Agent") with the Drug Enforcement Administration ("DEA"), concerning the investigation and Defendant's subsequent arrest. The Court finds Agent's testimony to be credible. He testified to the following:

1. Agent was familiar with Defendant and the charges leading to his arrest. Agent testified about an investigation that started with an undercover officer ("UC") negotiating a drug transaction with co-defendant Omar Jasso-Camargo in mid-November 2021. Agent testified that communications with Jasso-Camargo began several months before the November transaction. UCs had met with Jasso-Camargo before November. No transaction was arranged at that time. Jasso-Camargo continued communications with the UCs and in mid-November advised that his source was ready to conduct a transaction. Agent understood that Jasso-Camargo was the point of contact for multiple sources of supply. He coordinated the transaction.

2.  In mid-November, UC and Jasso-Camargo agreed to set up a narcotics transaction for 15 kilos of cocaine and 15 kilos of methamphetamine. They agreed on the following prices: the cocaine was $32,000 per kilo and the meth was $8,000 per kilo. The transaction was supposed to take place on November 21, but it occurred on November 29, 2021. Jasso-Camargo told UC that he would have the narcotics brought to Houston from the Valley.

3.  On November 29, the plan was to meet at the Palace Inn parking lot. Before the meeting, UC asked Jasso-Camargo to meet him at a Walmart parking lot in Kemah, Texas to confirm the presence of the drugs and the money was available. Before the meeting, Jasso-Camargo informed UC that he only had 5 kilos of cocaine. He said that there would be two cars from his side for the meeting with two other men.

4.  UC met Jasso-Camargo in the parking lot. UC was accompanied by another UC. Jasso-Camargo arrived in a pickup truck with a passenger, co-defendant Rodolfo Ramos. Jasso-Camargo told UC that he had the cocaine with him. Another vehicle arrived shortly afterwards. Defendant was driving the second pickup truck, a Ford F-150, and parked close by. Cantu exited the truck and walked to UC, Jasso-Camargo, and Ramos. All three of them engaged in discussions about the transaction with UC. Cantu and Ramos informed UC that they had travelled from the Valley to Houston to conduct the transaction. They said that they had to engage in the 5 kilos of cocaine transaction before they would be willing to do future transactions for larger quantities of drugs. They said that the first transaction was necessary to establish trust between the parties. Although Agent was not clear on what Cantu said specifically, he said all three men engaged in the discussion about continuing the drug transaction and engaging in future transactions after trust was established.

5.  During this discussion, UC flashed the funds for the transaction to the three men, showing the money they would receive as payment. Agent testified that this shows credibility that the UCs have the money to conduct the transaction. After all three of the men saw the money, UC asked to see the narcotics before going to the Palace Inn. Jasso-Camargo told UC to sit in the back seat of his truck. He instructed that the drugs were in a back pack. UC inspected the narcotics and saw narcotics in 5 brick shapes, consistent with the packaging for cocaine.

6.  UC then instructed the three men to proceed to the Palace Inn to finalize the transaction. The investigators had prearranged to have HPD initiate a traffic stop as they left the parking lot. HPD stopped both trucks. All three were arrested. The 5 packages field tested positive for cocaine, a Schedule II controlled substance. There was approximately 5.2 kilos of cocaine.

7.  After his arrest, Cantu agreed to a post-Miranda interview. He was confused as to why he was arrested. He said that he had no knowledge of any transaction. He said that he came to Houston to meet with Jasso-Camargo, but then he exercised his right to silence.

8.  Defendant did not put on any evidence.

Order

Based on the allegations in the complaint, the evidence presented at hearing, and the information in the Pretrial Services report, the Court concludes as follows:

(1) The evidence is overwhelming that Defendant committed the offenses with which he is charged, namely: possession with intent to distribute over 5 kilograms of a mixture or substance containing cocaine in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A)(ii).

(2) Pursuant to 18 U.S.C. § 3142(e), the drug charge, which carries a minimum 10 year sentence, creates a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community or Defendant's appearance as required. See United States v. Trosper, 809 F.2d 1107, 1110 (5th Cir. 1987) (presumption against pretrial release arises based on indictment's allegations).

(3) In addition to the presumption, the Government established by clear and convincing evidence that Defendant is a danger to the community such that he should be detained pending trial. See 18 U.S.C. § 3142(f) ("[A] finding . . . that no

condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."). Defendant is charged with possession with intent to distribute. The evidence establishes that Cantu was engaged in a transaction to sell 5 kilos of cocaine, that he and co-defendant Ramos brought to Houston to deliver for the sale that a third co-defendant Jasso-Camargo arranged. He was aware of the drugs he was transporting and evidenced intent to engage in future transactions for larger quantities of narcotics if trust was established through this first transaction. Defendant's involvement in a drug trafficking large quantities of narcotics is inherently dangerous to the community. Defendant has a criminal history and was on probation for a narcotics offense when he committed this crime. His participation in this narcotics transaction is a violation of his conditions of probation and shows that he will not follow conditions of release if the Court were to let him out on bond. Defendant has a conviction for domestic violence with his prior wife, which is further evidence that he is a danger. Defendant failed to produce any evidence to show that he does not pose a danger to the community.

(4) In addition to the presumption, the Government established by a preponderance of the evidence that the Defendant is a flight risk because the penalty range for the charge at issue is for jail time of 10 years to life. Because the evidence of guilt is strong, this enhances the risk of flight. He is self-employed, working in a flea market in Mission, Texas where his family lives. He owns no property and does not have any financial ties to the community. Defendant moved out of his home with his wife and children just before his arrest. He could provide no information as to where his family lived or where he was living after he moved out. His parents own a home in Hidalgo County, and his mother told PTS that Defendant could live with them, but no evidence regarding any arrangements were presented to the Court.

(5) Defendant has not rebutted the presumption that he is a danger to the community or a flight risk. See United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986) (to rebut this presumption, a defendant can show that something about his individual circumstances suggests that "what is true in general is not true in the particular case," including evidence of his marital, family and employment status, ties to and role in the community, clean criminal record and other types of evidence encompassed in § 3142(g)(3)).

(6) Thus, the Court finds that there are no conditions or combination of conditions that will reasonably assure safety to the community such that it cannot safely release him on bond.

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:  12/13/2021                                   _Dena Palermo_
                                                United States Magistrate Judge